IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 24-03568 (ESL) |
| ARTURO MEANA ALVAREZ | CHAPTER 13 |
| Debtor | FILED AND ENTERED 10/16/2026 |

**OPINION AND ORDER**

This case is before the court upon a concern of improper use of Generative Artificial Intelligence ("**Generative AI**") tools in court filings, and upon the responses filed by the Debtor, creditor Lynette Torres Marquez ("**Torres**"), the Chapter 13 Trustee, and the United States Trustee (the "**U.S. Trustee**") to this court's *Order on Use of Generative Artificial Intelligence in Filings with the Court* (the "**Generative AI Order**", dkt. #141).

*Procedural Background*

1. On April 16, 2026, the Debtor filed *Debtor's Objection to Allowance of Attorney's Fees and Bar to Refile* (the "**Objection**", dkt. #128) arguing, in sum, that Torres and/or ASUME lack standing to assert or waived claims for child-support arrears belonging to the Debtor's two adult daughters, whose rights became personal and vested upon reaching majority. The Debtor further contended that his daughters' due process and property rights cannot be affected without their consent, and that Torres' request for attorneys' fees and a bar to refiling is unsupported because there is no evidence of bad faith or abusive serial filings warranting such relief.

2. On May 21, 2026, the court entered the *Generative AI Order* (dkt. #141) noting its concern about the potential use of Generative AI in filings before the court, such as the *Objection*, which included references to rulings without citation, incomplete or defective case citations, and references to the Bankruptcy Code that were not supported by the text of the referenced statute. In light of such concern, the court ordered the parties to comply with the Generative AI disclosure requirements set forth therein (the "**Generative AI Disclosure**").

3. On the same day, the Debtor filed a *Motion in Compliance with Court's Order Regarding Use of Generative Artificial Intelligence in Filings with the Court (*the "**Motion in Compliance**", dkt. #142) stating that "the only use of artificial intelligence [in the *Objection*] was made in the research part to obtain caselaw in support of the debtor's position. (google, caselaw, find law)" (id., at ¶2(c)) and that the formatting was made by Grammarly. The Debtor also stated that the missing or incomplete citations were due to inadvertence of counsel and provided clarifications to the references to the Bankruptcy Code in the *Objection*.

4. On the same day, the Debtor also filed an *Amended Debtor's Objection to Allowance of Attorney Fees and Bar to Refile* (the "**Amended Objection**", dkt. #143), which amended and supplemented the *Objection* by revising the case citations and including the Generative AI Disclosure.

5. On May 25, 2026, Torres filed an *Opposition to Debtor's Objection to Attorney's Fees and DSO Claim* (dkt. #147), which was subsequently amended (dkt. #148), arguing that the Debtor's *Amended Objection* is an attempt to relitigate issues that were resolved by Puerto Rico State Courts, that the Rooker-Feldman doctrine precludes relitigation of those determinations in the bankruptcy court, and that the Debtor's argument that Torres does not have standing is flawed as Torres has a reimbursement claim against the Debtor.

6. On June 8, 2026, Torres filed an *AI Disclosure Statement of Debtors' (sic) Counsel Pursuant to Court Order for the Use of Generative AI Tools* (dkt. #149) stating that they have used Claude and Westlaw "in connection with the preparation of certain written submissions filed before this Court" (id., at p. 1) and explaining how these tools were used.

7. After the court ordered the Chapter 13 Trustee and the U.S. Trustee to state their positions on the *Motion in Compliance* (see, dkt. #144), on June 10, 2026, the Chapter 13 Trustee filed a *Motion in Compliance with Order Dkt. 144* (dkt. #150) arguing that the Debtor did not identify which Generative AI tools were used to conduct legal research and, instead, referred generally to internet search engines in the *Motion in Compliance*. Thus, the Chapter 13 Trustee posits that the *Motion in Compliance* does not comply with the court's *Generative AI Order*. The

Chapter 13 Trustee also states that, although they believe that the Debtor may have used Generative AI in additional filings not disclosed in the *Motion in Compliance*, they do not have the knowledge, training or expertise to categorically make such determination. The Chapter 13 Trustee further noted that counsel for the Debtor did not include his bar number and electronic signature in the *Amended Objection* despite the court's previous warnings.

8. Also on June 10, 2026, the U.S. Trustee filed a *Motion in Compliance with Court's Order at Docket No. 144* (dkt. #152) stating that, although some aspects of the *Motion in Compliance* "may seem deficient and even suspicious" (id., at ¶6), they do not have the necessary expertise to determine whether it complies with the court's *Generative AI Order*.

*Applicable Law and Discussion*

*i. The Use of Generative AI in Court Filings*

The use of Generative AI in court filings appears to be increasing as attorneys adopt these tools for legal research, drafting, and document review. That growth has also prompted courts to emphasize lawyers' continuing duty to verify Generative AI-generated citations, factual assertions, and legal analysis before submitting filings. In a recent case involving citations that were incorrectly formatted, contained erroneous reporter numbers, misidentified the relevant circuits or districts, or named the wrong parties, the U.S. District Court for the District of Puerto Rico (the "**District Court**") emphasized that the concern was not the use of Generative AI. See, Puerto Rico Soccer League NFP, Corp., v. Federación Puertorriqueña de Futbol, 2025 WL 1080732, at *3 (D.P.R. 2025). Rather, the problem was that the party had presented the court with a "litany of inaccurate information in support of [its] claims". Id. There, the District Court found that sanctions were appropriate under Fed. R. Civ. P. 11 and the court's inherent authority "given the extent of the errors … and the subsequent time and energy required by [d]efendants and the [c]ourt to fact-check [p]laintiffs' filings." Id. Fed. R. Bankr. P. 9011 parallels Fed. R. Civ. P. 11.

Under Fed. R. Bankr. P. 9011, by signing, filing, submitting, or advocating a petition, pleading, written motion, or other document, an attorney or unrepresented party certifies that, to the best of their knowledge, information, and belief formed after an inquiry reasonable under the

circumstances, "(1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law; (3) the allegations and factual contentions have evidentiary support--or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief." Fed. R. Bankr. P. 9011(b).

The purpose of Fed. R. Bankr. P. 9011 is to "deter baseless filings in bankruptcy court and thus avoid unnecessary judicial effort, thereby making proceedings in that court more expeditious and less expensive. In pursuit of this goal, all papers filed with the bankruptcy court require the signature of at least one attorney of record or, in the case of an unrepresented party, the signature of that party. The rule permits sanctions to be imposed on persons violating the rule and, it is hoped, will act to deter future conduct of the same nature." Alan N. Resnick & Henry J. Sommer, 10 Collier on Bankruptcy ¶ 9011.01 (16th ed., 2026). See also, White v. Burdick (In re CK Liquidation Corp.), 321 B.R. 355, 362 (1st Cir. BAP 2005) ("The purpose of Rule 11 is to deter abusive litigation tactics and streamline the litigation process by lessening frivolous claims").

*ii. Discussion*

This court presumes that all filings comply with Fed. R. Bankr. P. 9011(b), unless and until a contrary determination is made. The use of Generative AI tools does not relieve the parties of their obligations under Fed. R. Bankr. P. 9011. Further, to the extent that Generative AI tools have been shown to generate legal research that includes nonexistent or fictitious judicial citations and decisions, and incorrect, false or inaccurate statements of law, among others, mere reliance on a Generative AI tool for veracity does not constitute reasonable inquiry under Fed. R. Bankr. P. 9011(b). See, *e.g.*, Abdi Aidid, Toward an Ethical Human-Computer Division of Labor in Law Practice, 92 Fordham L. Rev. 1797, 1808 (2024); and Joe Regalia, Lex Ex Machina: Forging A

New Ethical Framework for AI and Technology in the Law, 55 Cumb. L. Rev. 53, 88 (2025). Attorneys owe a duty of candor to the court, and that duty applies with equal force to court filings prepared with the assistance of Generative AI. Counsel remain responsible for ensuring that all factual assertions and legal citations are accurate, properly attributed, and supported by the cited authorities.

The issue before the court is not whether counsel used Generative AI in preparing their submissions. Rather, the concern is that counsel may not rely on Generative AI for legal research or drafting without independently reviewing and verifying the resulting legal authorities, quotations, and factual assertions. Here, the filings included incomplete citations and referenced legal authority for propositions that the cited authority does not support. The court is also concerned with counsel's repeated failure to comply with applicable rules and to heed the court's orders requiring that filings include counsel's name, signature, and attorney bar number, notwithstanding multiple prior warnings.

An attorney's ethical duties require careful review and verification of all documents submitted to the court, including those drafted using Generative AI. Here, in response to the *Generative AI Order*, counsel for the Debtor promptly filed the *Motion in Compliance* and the *Amended Objection* providing complete case citations. Moreover, the cited cases existed and were not fabricated. As to the statutes cited, the court will consider the Debtor's characterizations thereof in the *Motion in Compliance* and the *Amended Objection* and will accord those authorities the weight warranted by their text, context, and applicability to the issues presented.

Considering the foregoing, and because neither the U.S. Trustee nor the Chapter 13 Trustee has advanced an additional basis for sanctions, the court will not impose sanctions on this occasion based on Debtor's counsel's use of Generative AI.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of October 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge